## ARNOLD GREENLEAF *vs.* SAMUEL D. MOODY & others.

In unforeseen circumstances of necessity or great urgency, a factor has an implied authority to act for his principal, irrespective of his instructions or the ordinary usages of trade, in adjusting contracts and claims and disposing of property; and a factor who has so acted, in good faith and with a sound discretion, under the circumstances as they then appeared, will not be liable for the consequences, although it turns out that his course was disadvantageous to his principal.

The owner of hay in Maine consigned it to New Orleans to be sold, during the rebellion. The military authorities of the United States bought a portion, agreeing to pay for it in cash, and seized the remainder; and afterwards refused to pay for any of it except in government certificates of indebtedness, bearing interest, to be taken at par. The consignees, acting in good faith and according to their best judgment and the usual custom of factors at New Orleans at that time, but without notice to the owner, accepted these certificates of indebtedness, and shortly afterwards sold the same at ninety-three cents on the dollar, which was then their market value there. The owner was ignorant of this custom. *Held*, that the factors were not liable to the owner for the discount of seven per cent. made in selling the certificates of indebtedness.

CONTRACT brought against the consignees of hay, to recover damages for their neglect, duly to account for the proceeds thereof. The following facts were agreed in the superior court:

The plaintiff, a merchant in the State of Maine, shipped in the summer of 1864 four hundred and fifty-five tons of hay to New Orleans, and consigned the same for sale to the defendants, who were commission merchants in that city. The defendants advanced and paid the freight and some other charges thereon, amounting to $12,682.25, and their charge and commission for advancing, selling and storage amounted to $1,621.20. The defendants never requested the plaintiff to reimburse them for such advances or to pay said charges, nor called on him to put them in funds therefor or for any part thereof, nor gave any notice that they should sell on account thereof.

On the fourth day of October 1864 the defendants sold for cash to the United States, acting by the military officers then in command at New Orleans, two hundred and seventy-six tons of the hay, at the rate of fifty-two dollars per ton; and, on the seventh of said October, forty-five tons, at the rate of fifty dollars per ton, for cash. After said hay was delivered, the United

States, by said military officers, refused to pay cash therefor or to make any other settlement or payment therefor, except in the certificates of indebtedness of the United States, but they offered to the defendants such certificates of indebtedness therefor at par ; and the defendants, being unable to obtain payment therefor in money or in any other mode or way, in the exercise of their discretion accepted the same.    These certificates were negotiable by delivery, drawing and bearing interest at the rate of six per cent. per annum, and were bought and sold in the market at prices which fluctuated from time to time.

On the twenty-third day of said October the United States government, by its military officers and by military order, seized the remainder of the hay, and forcibly took the same away from the possession of the defendants, and offered the defendants payment therefor at the rate of fifty-three dollars a ton, in certificates of indebtedness as above described, but refused to make any other or different payment, or payment in cash, or at any different rate ; and the defendants, for the same reason and in the exercise of the like discretion, as above stated, accepted the same.

The defendants, without any notice to the plaintiff or advising him of said seizure or the settlement for said hay by the government by giving such certificates, and without requesting the plaintiff to reimburse the advances made by them, sold these certificates of indebtedness in New Orleans, on or about October 25th, at ninety-three cents on the dollar, that being their value in New Orleans at that time, and on the 28th of October made up and sent to plaintiff an account of sales of said hay, crediting themselves with the cash actually received from the sale of said certificates, and charging their advances and the usual commissions and charges amounting as hereinbefore stated, and remitted to him the amount of the balance so found due to him.

It was agreed, if it would be competent evidence, that factors and others in New Orleans, at that time, generally, but not invariably, received such certificates in settlement of sales to the United States government, and for goods seized by the government, and also sold them in the market under the circumstances

as above stated; that such certificates had only been given since the breaking out of the war, and at New Orleans subsequently to its possession by the United States forces, which was about May 1st 1862; and that the fact of factors so receiving and selling such certificates was not known to the plaintiff. It was not contended that in taking these certificates and selling them as aforesaid the defendants acted otherwise than in good faith and according to their best judgment.

The par value of all of said certificates received by defendants was $23,704, and the amount received by the defendants for the sale of the certificates was $1659.28 less than that sum.

On these facts judgment was rendered for the defendants, and the plaintiff appealed to this court.

*H. W. Paine & T. F. Nutter*, for the plaintiff. It may be conceded that a factor may exercise his sound discretion in respect to matters within the scope of his agency. But in this case the authority of the defendants was not unlimited, and they had no right to treat the plaintiff's property as they would treat their own. By their contract with the United States, they were entitled to cash, and had no right to accept anything but cash. A factor for sale has no right to barter away the goods of his principal, or to sell on credit, unless there is a usage to that effect. In this case, the debtors were solvent, and the sale was for cash, and the defendants had no right to accept anything in payment which was of less value than cash. If the sale had been to an individual, and his notes were received in place of cash, clearly the factors would be liable. So in respect to the portion of the hay which was seized by the military authorities, it was the duty of the defendants to give notice to the plaintiff, so that he might exercise his discretion in the premises. The defendants had simply the powers of selling agents, and might as well have assumed the power to compromise with a trespasser at fifty per cent.

Having taken certificates of indebtedness, the defendants had no authority to sell them for less than par. The plaintiff had the right to decide what disposition should be made of them. At any rate, the defendants should not have sold them in New Orleans, but should have sent them to the north.

The usage relied on was not admissible in evidence. It was not reasonable, uniform, or known to the plaintiff; and it was of so recent origin that his knowledge could not be presumed.

*T. K. Lothrop & R. R. Bishop*, for the defendants, cited, as to the general authority of a factor, *Leverick* v. *Meigs*, 1 Cow. 659; *Liotard* v. *Graves*, 3 Caines R. 238; *Moore* v. *Mourgue*, 2 Cowp. 479–481; *Evans* v. *Potter*, 2 Gallis. 13; *Burrill* v. *Phillips*, 1 Gallis. 360; *S. C.* 1 Amer. Lead Cas. (4th ed.) 685, 698, 699; *Brown* v. *M'Gran*, 14 Pet. 490; as to a factor's right to disregard positive orders, upon the occurrence of unexpected events, *Forrestier* v. *Bordman*, 1 Story R. 43; *Williams* v. *Shackelford*, 16 Alab. 318; Paley on Agency, 108; and as to the evidence of usage, as showing that the defendants exercised a sound discretion, *Courcier* v. *Ritter*, 4 Wash. C. C. 552, 553; *S. C.* 1 Amer. Lead Cas. 691; *Goodenow* v. *Tyler*, 7 Mass. 36.

FOSTER, J. This case must depend for its decision upon the application of well established legal principles to a state of facts of an unusual and extraordinary character.

The defendants, commission merchants or factors in New Orleans, received during the rebellion in 1864 from the plaintiff a large quantity of hay consigned for sale, upon which they made advances in payment of freight and other charges amounting to about half its value. Three hundred and twenty-one tons of the hay were sold to the military officers of the United States for cash. The remainder, one hundred and thirty-four tons, were seized by military authority. No fault could be imputed to the factors for either of these events. The sales for cash were clearly within the scope of their authority, and the seizure by the strong arm of military power was an occurrence beyond their control.

The only payment which the United States officers would make, either for the hay purchased or for that seized, was in certificates of indebtedness, the negotiable notes of the United States, payable to the bearer and upon interest at the rate of six per cent. per annum. The factors accepted these as payment, and at once sold them for their market value, ninety-three cents on the dollar. The plaintiff claims that the defendants are liable

for the loss sustained by this sale at a discount, first, because as factors they had no right to take in payment such securities; and secondly, because, if justified in accepting them, they had no right to sell them below par without notice to him. And we are called upon to decide whether in either of these particulars they violated their duty, so as to render themselves personally answerable to their principal, the consignor, for the loss sustained by the sale of the certificates at a discount below their face.

The ordinary rule is clear, that factors must obey the instructions of their principal; that they may not compromise debts without authority ; that they must, under a change of circumstances, advise the consignor, and await his directions ; and that they must conform to the usages of trade presumed to be known to both parties, or to the course pursued by them and approved by the owner in former instances. But what is their duty in novel, critical and unforeseen emergencies ? To answer this question we may refer to an opinion of Mr. Justice Story in a suit relative to the conduct of a supercargo who had totally departed from the instructions of the shipper, which is so apposite that we adopt its principles and the substance of its language. In circumstances of necessity or great urgency it is only necessary that the agent should act *bona fide* and with reasonable discretion. " What, then, was it the duty of the supercargo to do in such a case of unexpected occurrence, not within the contemplation of the instructions ? " " Now I take it to be clear that if, by some sudden emergency, or supervening necessity, or other unexpected event, it becomes impossible for the supercargo to comply with the exact terms of his instructions, or a literal com pliance therewith would frustrate the objects of the owner and sacrifice his interests, it becomes the duty of the supercargo, under such circumstances, to do the best he can, in the exercise of a sound discretion." " He becomes, in such a case, an agent from necessity for the owner." " In all voyages of this sort there is an implied authority to act for the interest and benefit of the owner in all cases of unforeseen necessity and emergency, created by operation and intendment of law." *Forrestier* v. *Bordman,*

1 Story R. 43, 51. A justification founded upon necessary departure from the ordinary customs of trade or from actual instructions must undoubtedly be construed with considerable strictness. The agent cannot be allowed lightly or unadvisedly to assume a latitude of discretion not conferred upon him by express authority, or by those usages of trade, which both parties are presumed to have known and contemplated. But the interests of commerce require, and the enlightened principles of commercial law bestow, a discretion which enables the factor to protect his principal from the irreparable injury which would be liable to arise in the absence of authority to act under critical circumstances, unexpectedly occurring, which do not admit of delay for the purposes of communication and consultation. And the factor, so placed, who acts prudently and in good faith, as the owner himself, being a wise man, would have been likely to do if personally present, finds his protection in the sincerity and sound discretion of his conduct, and is not answerable for consequences, although subsequent events may demonstrate that his principal would have been the gainer by a different course from the one he has conscientiously and discreetly adopted.

This is the rule which must govern the decision of the case here submitted to us. It is a question of fact rather than of law. The good faith of the defendants is expressly conceded. We might, in strictness, give judgment for them on the ground that the case stated does not affirmatively establish their liability. But we prefer, in conformity with what we suppose to be the intention of the parties, to consider and pass upon the question, whether the defendants did act with such prudence and discretion as to exempt them from liability. Ought they to have refused the certificates proffered in payment? If they had done so, the only redress open to the plaintiff would have been an application to the war department at Washington or to congress or to the court of claims. No rational man could regard these remedies as worth pursuing to avoid a discount of seven per cent., the whole amount of which was only $1659.28. The expense, the delay, the uncertainty of ultimate success, would have induced any one, having regard solely to his pecuniary

interest, and acting in his own affairs, to accept the proffered certificates rather than to attempt to stand upon his strict legal rights, where no legal remedy was practically available without disadvantages disproportionate to the amount at stake.

The propriety of selling the certificates may be considered more questionable. As they were sold as soon as received, justice requires us to regard the factors' entire judgment and conduct together, and if the principal was benefited by the whole exercise of their discretion, and placed in a better condition than if they had refused to assume the responsibility, it would be unfair to subject them to loss because they might in one respect have done still better. No one can say that they would have decided to accept the certificates without also, as a part of the same mental act, deciding to convert them forthwith into cash. But we do not proceed upon this narrow ground alone. In guarding the interests of a distant principal it was their duty to err on the side of prudence rather than of over-confidence. We must remember the situation of the parties and the country at the time of the transaction, and judge by the light they then had, and not according to the wisdom that comes after the event. The ordinary facilities of correspondence between Maine and New Orleans were greatly interrupted. No telegraphic communication was possible. The mails were slow and uncertain, and somewhat exposed to capture in transit. The interval within which the most speedy interchange of letters could take place was long enough for momentous events. The pecuniary credit of the government depended on the varying fortunes of war. A single disaster might have depressed the market value of the securities far below the point at which they then stood. Other factors and agents similarly situated with themselves deemed it their duty to realize at the current rates of the market. More than half of the proceeds of the property would be required in New Orleans to pay advances and charges. The justification of the sale is not to be placed on the ground that they had a right to make a sacrifice in order to reimburse themselves, for factors cannot sell below limits without notice to the owner of the amount due and a request for payment. But

the fact that the consignor owed $14,303.45, payable in New Orleans, on account of this shipment, was a circumstance of some weight in determining the question of expediency. If the securities were to be sent to the North, and the money due to be remitted thence, double risks of transportation must be incurred.

It is impossible for us to conclude that the course adopted exhibited any such error of judgment or neglect of duty as ought to render mercantile agents personally responsible to their principals.     *Judgment for the defendants.*